FILED

APR 1 8 2005

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

1  Judith Pearce, SBN 100016
   James Cai, SBN 200189
2  FORTUNE LAW GROUP LLP
   100 Century Center Court, Suite 315
3  San Jose, California 95112
   Telephone:  (408) 436-0789
4  Facsimile:  (408) 436-0758

5  Attorneys for Plaintiffs
   HAIBO CHI, DAFENG CHEN, RUILING QIN, TYSON LEE, LIMING MA
6  TAO JIN, WEI YUAN, XIN ZHOU, YUE XU, BAIO ZHANG, LI ZHANG,
   RAN XIAO, JEFF ZHU, LINDI WANG, EDMOND CHEN, ZHEN HAO, XUEPU ZHAO,
7  HAIYING WANG, NING XU, SHU-JANE TAN

8

9               UNITED STATES DISTRICT COURT

10              NORTHERN DISTRICT OF CALIFORNIA

11

12  HAIBO CHI, DAFENG CHEN, RUILING          Case No.:
    QIN, TYSON LEE, LIMING MA, TAO JIN,                    C 05  01594
13  WEI YUAN, XIN ZHOU, YUE XU, BIAO
    ZHANG, LI ZHANG, RAN XIAO, JEFF                                HRL
14  ZHU, LINDI WANG, EDMOND CHEN,
    ZHEN HAO, XUEPU ZHAO, SHU-JANE          COMPLAINT FOR BREACH OF
15  TAN, HAIYING WANG, NING XU,             CONTRACT, FRAUD, BREACH OF
                                           FIDUCIARY DUTY, CONVERSION,
16          Plaintiffs,                     UNAUTHORIZED OFFER AND
                                           ISSUANCE OF SECURITIES,
17  v.                                      NEGLIGENCE, LEGAL MALPRACTICE,
                                           CIVIL CONSPIRACY, AND COMMON
18  DIRECT EQUITIES LLP, DIRECT             COUNTS
    EQUTIES, INC. (D.B.A. NATIONWIDE
19  PROPERTIES), CRAIG N. KIRT, THE
    ADMINISTRATOR OF THE ESTATE OF
20  CRAIG N. KIRT, INGRID KIRT, STEVE M.
    SCOTT, KELLY KINGSLAND, PAUL            JURY TRIAL DEMANDED
21  KASPUTIS, ENTRUST
    ADMINISTRATION, INC., DAVID
22  WINTER, AND DOES 1-50,
23
24          Defendants.
25

26      Come now Plaintiffs HAIBO CHI, DAFENG CHEN & RUILING QIN, TYSON LEE,
    LIMING MA, TAO JIN, WEI YUAN, XIN ZHOU, YUE XU, BIAO ZHANG, LI ZHANG,
27  RAN XIAO, JEFF ZHU, LINDI WANG, EDMOND CHEN, ZHEN HAO, SHU-JANE TAN,
    XUEPU ZHAO, HAIYING WANG and NING XU to allege as follows:
28

*Chi, et al. v. Direct Equities, et al.*
Complaint – Page 1

<u>INTRODUCTION</u>

This is a real estate investment fraud case where Plaintiffs lost over $950,500 due to fraudulent and other illegal conduct of the Defendants.

<u>PARTIES</u>

1.      Plaintiff Haibo Chi, is and at all times herein mentioned was, a resident of the State of California, County of Santa Clara.

2.      Plaintiff Dafeng Chen ("CHEN"), is and at all times herein mentioned was, a resident of the State of California, County of San Mateo.

3.      Plaintiff Ruiling Qin, is and at all times herein mentioned was, a resident of the State of California, County of San Mateo.

4.      Plaintiff Tyson Lee ("LEE'), is and at all times herein mentioned was, a resident of the State of California, County of Santa Clara.

5.      Plaintiff Liming Ma, is and at all times herein mentioned was, a resident of the State of California, County of Los Angeles.

6.      Plaintiff Tao Jin, is and at all times herein mentioned was, a resident of the State of California, County of Santa Clara.

7.      Plaintiff Wei Yuan, is and at all times herein mentioned was, a resident of the State of California, County of Santa Clara.

8.      Plaintiff Xin Zhou ("ZHOU"), is and at all times herein mentioned was, a resident of the State of California, County of Santa Clara.

9.      Plaintiff Yue Xu, is and at all times herein mentioned was, a resident of the State of California, County of San Mateo.

10.     Plaintiff Biao Zhang, is and at all times herein mentioned was, a resident of the State of California, County of San Mateo.

11.     Plaintiff Li Zhang, is and at all times herein mentioned was, a resident of the State of California, County of Santa Clara.

12.     Plaintiff Ran Xiao, is and at all times herein mentioned was, a resident of the State of California, County of San Mateo.

13.     Plaintiff Jeff Zhu, is and at all times herein mentioned was, a resident of the State of Virginia.

14.     Plaintiff Lindi Wang, is and at all times herein mentioned was, a resident of the State of Virginia.

15.     Plaintiff Shu-Jane Tan ("TAN"), is and at all times herein mentioned was, a resident of the State of California, County of Orange County.

16.     Plaintiff Edmond Chen, is and at all times herein mentioned was, a resident of the State of California, County of San Mateo.

17.     Plaintiff Zhen Hao ("HAO"), is and at all times herein mentioned was, a resident of the State of California, County of Santa Clara.

18.     Plaintiff Xuepu Zhao, is and at all times herein mentioned was, a resident of the State of California, County of Santa Clara.

19.     Plaintiff Haiying Wang, is and at all times herein mentioned was, a resident of the State of California, County of Santa Clara.

20.     Plaintiff Ning Xu, is and at all times herein mentioned was, a resident of the State of California, County of Santa Clara.

21.     Defendant Direct Equities LLP ("Direct Equities") is a limited liability partnership registered in Colorado, and at all time relevant herein, is, and was an entity doing business in the State of California.

22.     Defendant Direct Equities, Inc. ("Direct Equities, Inc.") is a Georgia corporation registered in Georgia, and at all time relevant herein, is, and was a company doing business in the State of California under the name of Nationwide Properties and acting as a manager of Direct Equities.

23.     Plaintiffs are informed and believe, and thereon allege, that Defendant Craig N. Kirt ("KIRT") was a partner of Direct Equities and is now deceased.

24.     Plaintiffs are informed and believe, and thereon allege, that Defendant Ingrid Kirt ("INGRID") is the spouse of Defendant KIRT and an employee, partner and Chief Financial Officer of Direct Equities.

25.     Plaintiffs are informed and believe, and thereon allege, that Defendant Kelly Kingsland ("KINGSLAND") is a partner of Direct Equities.

26.     Plaintiffs are informed and believe, and thereon allege, that Defendant Steve Scott ("SCOTT") is an employee, partner and executive officer of Direct Equities.

27.     Plaintiffs are informed and believe, and thereon allege, that Defendant Paul Kasputis ("KASPUTIS") is a partner of Direct Equities.

28.     Plaintiffs are informed and believe, and thereon allege, Defendant Entrust Administration, Inc. ("ENTRUST") is a California corporation, and at all time relevant herein, is, and was a company doing business in the State of California.

29.     Plaintiffs are informed and believe, and thereon allege, that Defendant David Winter ("WINTER") is an attorney licensed to practice law in the State of Nevada and consultant for Defendant Direct Equities.

30.     Plaintiffs are ignorant of the true names and capacities of Defendants sued herein as DOES 1-50, inclusive, and therefore sue these defendants by such fictitious names.  Plaintiffs will amend this Complaint to allege their true names and capacities when ascertained.

31.     At all times relevant herein, and at the time of the transactions complained of, each of the Defendants was the agent and employee of each of the remaining Defendants, and in doing the things hereinafter alleged, was acting within the scope of such agency

<u>JURISDICTION</u>

32.     Plaintiffs incorporate the allegations of Paragraphs 1 through 31, infra, into this Paragraph as if fully set forth herein.

33.     All Plaintiffs other than JEFF ZHU and LINDI WANG are citizens of California. Plaintiffs JEFF ZHU and LINDI WANG are citizens of Virginia.

34.     Defendant Direct Equities is a Colorado limited liability partnership.

35.   Defendant Direct Equities, Inc. is a Georgia corporation.

36.   Defendants KIRT was a citizen of Georgia.

37.   Defendants SCOTT, KINGSLAND and KASPUTIS are citizens of Georgia.

38.   Defendant INGRID, who is also the Administrator of the Estate of Craig N. Kirt, is a citizen of California.

39.   Defendant ENTRUST is a California corporation.

40.   Defendant WINTER is a citizen of Nevada.

41.   This Court has original jurisdiction under 28 USC §1332, in that it is a civil action between citizens of different states in which the matter in controversy exceeds seventy five thousand dollars.

<u>VENUE</u>

42.   Plaintiffs incorporate the allegations of Paragraphs 1 through 41, infra, into this Paragraph as if fully set forth herein.

43.   Venue is proper in this District because a substantial part of the events or omissions giving rise to the Complaint occurred in this District.

<u>ALTER-EGO ALLEGATIONS</u>

44.   Plaintiffs incorporate the allegations of Paragraphs 1 through 43 infra, into this Paragraph as if fully set forth herein.

45.   Plaintiffs are informed and believe and on that basis allege that Defendants Direct Equities and Direct Equities, Inc. are and at all times since their formation were, the alter ego of Defendants KIRT, INGRID, KINGSLAND, KASPUTIS and SCOTT.  Plaintiffs are informed and believe, and on that basis allege, that there is a unity of ownership and interest by and between defendants such that any separateness between them has never existed.

*Chi, et al. v. Direct Equities, et al.*
Complaint – Page 5

46.     Plaintiffs are informed and believe and on that basis allege that Direct Equities and Direct Equities, Inc. were formed and operate with inadequate capitalization and fail to respect other corporate formalities that would indicate a separate existence from Defendants KIRT, INGRID, KINGSLAND, KASPUTIS and SCOTT.

47.     Plaintiffs are informed and believe and on that basis allege that Defendants KIRT, INGRID, KINGSLAND, KASPUTIS and SCOTT commingled and failed to segregate the funds and assets of Direct Equities and Direct Equities, Inc. from their own and treated the assets and funds nominally belonging to Direct Equities and Direct Equities, Inc. as their own funds.

48.     Plaintiffs are informed and believe and on that basis allege that Defendant KIRT, INGRID, KINGSLAND, KASPUTIS and SCOTT have controlled, dominated, managed and operated Direct Equities and Direct Equities, Inc. since their formation for their benefit.

49.     Defendant Direct Equities and Direct Equities, Inc. are, and at all times mentioned were, a mere shell, instrumentality and conduit through which Defendants KIRT, INGRID, KINGSLAND, KASPUTIS and SCOTT carry on their activities.  Defendants KIRT, INGRID, KINGSLAND, KASPUTIS and SCOTT exercised and continued to exercise such complete control and dominance of the activities of Direct Equities and Direct Equities, Inc. that any individuality or separateness of the corporate defendants does not, and at all relevant times did not, exist.  Plaintiffs are informed and believe and on that basis allege that Direct Equities and Direct Equities, Inc. existed solely to ensure that Defendants KIRT, INGRID, KINGSLAND, KASPUTIS and SCOTT remain "judgment proof."

50.     Adherence to the fiction of the separate existence of Direct Equities, Direct Equities, Inc. and Defendants KIRT, INGRID, KINGSLAND, KASPUTIS and SCOTT as entities distinct from each other would permit an abuse of the privileges against liability

afforded to companies and corporations, and would result in unfairness to Plaintiffs and an

inequitable result. It would promote injustice by allowing Defendants KIRT, INGRID,

KINGSLAND, KASPUTIS and SCOTT to evade liability or veil assets that should in equity be

used to satisfy the judgment sought by Plaintiffs in this action.

<u>GENERAL ALLEGATION</u>

51.    On or about May 9, 2001, Defendants KIRT, INGRID, KINGSLAND,

KASPUTIS and SCOTT incorporated Direct Equities as a limited partnership in Colorado.

52.    Shortly thereafter, Defendants KIRT, INGRID, KINGSLAND, KASPUTIS and

SCOTT set up an internet website and began to send out marketing materials to citizens in

California to solicit investment in Direct Equities.

53.    To facilitate the solicitation, Defendants KIRT, INGRID, KINGSLAND,

KASPUTIS and SCOTT incorporated Direct Equities, Inc. in Georgia and filed its DBA (doing

business as) name of Nationwide Properties with Secretary of State of California, to act as a

corporate manager of Direct Equities with the intent to shield personal liability of Defendants

KIRT, INGRID, KINGSLAND, KASPUTIS and SCOTT.

54.    Defendants KIRT, INGRID, KINGSLAND, KASPUTIS and SCOTT, through

Direct Equities and Direct Equities, Inc., represented to Plaintiffs that Direct Equities would set

up separate funds to acquire distressed real properties for rehabilitation and later resell them for

quick profit, which would be shared 50-50 between the managing partners of Direct Equities

and its investors. Defendants KIRT, INGRID, KINGSLAND, KASPUTIS and SCOTT,

through Direct Equities and Direct Equities, Inc., promised Plaintiffs that they would receive a

secure path of income, and share exceptional returns in equity and overall profit, and that Direct

Equities had developed a steadfast plan to make a safe and lucrative investment.

55.     Defendants KIRT, INGRID, KINGSLAND, KASPUTIS and SCOTT, through Direct Equities and Direct Equities, Inc., represented to Plaintiffs that there was no front end load: There were no commission, organizational, attorneys or accounting fees subtracted from the investing party, and 100% of monies invested go toward the rehabilitation of the real properties.

56.     Defendants KIRT, INGRID, KINGSLAND, KASPUTIS and SCOTT, through Direct Equities and Direct Equities, Inc., promised to pay Plaintiffs 12% fixed rate return, paid quarterly.

57.     Defendants KIRT, INGRID, KINGSLAND, KASPUTIS and SCOTT, through Direct Equities and Direct Equities, Inc., represented to Plaintiffs that Plaintiff's investment will be secured by 2nd deed of trust on real estate properties acquired by Direct Equities and "each member of Direct Equities managing partner's team" is funded by and benefits ONLY from the successful execution of Direct Equities' goals over and above its 2nd trust deed obligation.

58.     Defendants KIRT, INGRID, KINGSLAND, KASPUTIS and SCOTT, through Direct Equities and Direct Equities, Inc., solicited Plaintiffs to invest through their tax deferred retirement accounts and advised them to set up retirement accounts directly with Direct Equities' affiliate Defendant ENTRUST.  Under the advice of Defendants Direct Equities and ENTRUST, Plaintiffs LEE, CHEN, ZHOU, TAN, and HAO set up their retirement accounts with ENTRUST and made investment in various funds of Direct Equities through such retirement accounts.

59.     Defendants KIRT, INGRID, KINGSLAND, and SCOTT solicited the Plaintiffs to invest in different funds of Direct Equities with individual capital accounts.  Nonetheless,

Defendants KIRT, INGRID, KINGSLAND, KASPUTIS and SCOTT commingled Plaintiffs'

investment and failed to maintain individual capital accounts for each Plaintiff.

60.     Defendants KIRT, INGRID, KINGSLAND, KASPUTIS and SCOTT used the

Plaintiffs' investment proceeds to acquire the following real properties around Atlanta Georgia

area (collectively, the "Real Properties") commonly known as:

(1) 127 Cambridge Avenue, Decatur, Georgia 30030-3502 (Dist-2, LL-213; Blk-07; Prcl-013)

(2) 298 Cambridge Avenue, Decatur, Georgia 30030-3502

(3) 2857 Hosea L Williams Drive, SE Atlanta, Georgia 30317-3052

(4) 500-504 Morgan Street, NE Atlanta, Georgia 30308-2821

(5) 520 W. Pharr Road, Decatur, Georgia 30030-4840

(6) 2615 Hosea L Williams Drive, SE Atlanta, Georgia 30317-3052

(7) 2812 Craigie Avenue, Decatur, Georgia 30030-3960 (Dist-15, LL-248, Blk-16, Prcl-033, Lot-2; PltBk-29, Pge-64)

(8) 2820 Craigie Avenue, Decatur, Georgia 30030-3960 (Dist-15, LL-248, Blk-16, Lot-1; PltBk-29, Pge-64)

(9) 2830 Villa Circle, Decatur, Georgia 30030-3967 (Dist-15, LL-248, Blk-16, Prcl-039, Lot-3; PltBk-29, Pge-64)

(10) 2840 Villa Circle, Decatur, Georgia 30030-3967 (Dist-15, LL-248, Blk-16, Lot-5, PltBk-29, Page 64, Prcl-040)

(11) 2860 Villa Circle, Decatur, Georgia 30030-3967

(12) 2864 Villa Circle, Decatur, Georgia 30030-3967

(13) 2870 Villa Circle, Decatur, Georgia 30030-3967

(14) 2345 Logan Circle, Ne Atlanta, Georgia 30319-3849 (Dist-18, LL-201, Blk-01, Prcl-052, Deed Bk-14618, Pge-339, Brookhaven View S/D Lot -5B)

(15) 1671 Musket Ridge, Nw Atlanta, Georgia 30327-3935

(16) 170 Watson Circle, Se Atlanta, Georgia 30317-2617

(17) 71 Lannon Avenue, Ne Atlanta, GA 30317-2929

61.     The Real Properties are held personally by Defendant KIRT under his own name, in violation of the Limited Liability Partnership Agreements (the "Investment Agreements") between Plaintiffs and Direct Equities.

62.     Defendant KASPUTIS, as a real estate broker, actively engaged in searching and purchasing real properties for Defendant KIRT using Plaintiffs' investment funds and received commission and profits he was not entitled to.

63.     After Defendant KIRT died in February 2005, Plaintiffs discovered that Defendants KIRT, INGRID, KINGSLAND, KASPUTIS and SCOTT had embezzled almost all of the Plaintiffs' investment funds for their personal use and enjoyment, including, but not limited to, paying tuition for their children's private school education, personal rent, insurance, commission, salary, credit card expenses, entertainment, vacation, and concealed such facts from Plaintiffs. The real estate investment and rehabilitation were grossly mismanaged with little, if any, equity left on most of the Real Properties. None of Plaintiffs' investment was secured by 2nd deed of trust on any Real Property as promised.

64.     As a result, almost all of Plaintiffs' investment in excessive of $950,500 is lost.

65.     Defendant WINTER is an attorney licensed to practice in Nevada and was engaged by Direct Equities as its legal counsel for the investment transactions described in this complaint. He is not licensed to practice law in California and yet, drafted the Investment Agreements for Plaintiffs to enter into in California and actively advised Defendant Direct Equities in its solicitation of investment from California citizens.

66.     Defendant ENTRUST ADMINISTRATION, INC. ("ENTRUST") is a California company that provides third party administration for tax deferred and tax free retirement plans. Direct Equities is affiliated with ENTRUST and actively solicited and advised Plaintiffs to set

up their retirement accounts with ENTRUST and use their retirement funds in such accounts to make investment in Direct Equities.

67.     ENTRUST acted as custodian for Plaintiffs LEE, CHEN, HAO, TAN and ZHOU's retirement accounts and was contracted to follow the specific investment directions of Plaintiffs LEE, CHEN, HAO, TAN and ZHOU in investing their funds.  ENTRUST breached its obligation by sending Plaintiffs LEE, CHEN, HAO, TAN and ZHOU's funds to the general account of Direct Equities, rather than the separate funds of Direct Equities as instructed by Plaintiffs LEE, CHEN, HAO, TAN and ZHOU.

68.     ENTRUST was also obligated to provide detailed and specific periodical account statements to Plaintiffs LEE, CHEN, HAO, TAN and ZHOU, but it failed to do so.

69.     ENTRUST did not conduct reasonable background check about Direct Equities before affiliating itself with Direct Equities and sending Plaintiffs investment to Direct Equities.

FIRST CLAIM

Breach of Contract

[By All Plaintiffs Against Defendants DIRECT EQUITIES, DIRECT EQUITIES, INC., KIRT, THE ADMINISTRATOR OF THE ESTATE OF CRAIG N. KIRT, INGRID, KINGSLAND, KASPUTIS and SCOTT]

70.     Plaintiffs re-allege and incorporate all the allegations of this Complaint contained in paragraphs 1 through 69 above, as if fully stated herein.

71.     Plaintiffs entered into contracts with Defendant Direct Equities, including, but not limited to, the Investment Agreements, to make investment with Direct Equities.

72.     The Investment Agreements obligated Direct Equities and its agents, partners, managers and employees to invest 100% of Plaintiffs' investment towards the costs of

rehabilitation of residential real estate properties and secure the same by 2nd deed of trust on such real properties.

73.     Defendant Direct Equities and its agents, partners, owners, managers and employees including, but not limited to, Defendants Direct Equities, Inc., KIRT, INGRID, KINGSLAND, KASPUTIS and SCOTT breached the Investment Agreements by failing to apply 100% of the Plaintiffs' investment in the purchase and rehabilitation of residential real properties and to secure the investment by 2nd deed of trust on such real properties.

74.     Plaintiffs have performed all of their obligations under the Investment Agreements.

75.     As a direct and proximate result of Defendants' breach of the contracts, including, but not limited to, the Investment Agreements, Plaintiffs has suffered damages in excessive of $950,500, the exact amount of which will be proven at trial.

WHEREFORE, Plaintiffs pray judgment against Defendants DIRECT EQUITIES, DIRECT EQUITIES, INC., KIRT, THE ADMINISTRATOR OF THE ESTATE OF CRAIG N. KIRT, INGRID, KINGSLAND, KASPUTIS and SCOTT as more fully set forth below.

SECOND CLAIM

Fraud

[By All Plaintiffs Against Defendants DIRECT EQUITIES, DIRECT EQUITIES, INC., KIRT, THE ADMINISTRATOR OF THE ESTATE OF CRAIG N. KIRT, INGRID, KINGSLAND, KASPUTIS and SCOTT]

76.     Plaintiffs herein incorporate paragraphs 1-75 as though fully set forth herein.

77.     When Defendant DIRECT EQUITIES and its agents, partners, managers and/or employees, including, but not limited to, DIRECT EQUITIES, INC., KIRT, INGRID, KINGSLAND, KASPUTIS and SCOTT made representations and promises to Plaintiffs that there were no commission, organizational, attorneys or accounting fees subtracted from

Plaintiffs' investment, and 100% of monies invested go toward the rehabilitation of the

distressed real properties, and that each of Defendants DIRECT EQUITIES, INC., KIRT,

INGRID, KINGSLAND, KASPUTIS and SCOTT is funded by and benefits only from the

successful execution of Direct Equities' goals over and above its 2nd trust deed obligations, and

that Plaintiffs' investments would be secured by 2nd deed of trust on the real properties, they

knew such representations and promises were false or they had no reasonable ground for

believing the representations and promises were true.

78.     Defendants DIRECT EQUITIES, DIRECT EQUITIES, INC., KIRT, INGRID,

KINGSLAND, KASPUTIS and SCOTT made the representations with the intent to defraud and

induce Plaintiffs to invest in Defendant DIRECT EQUITIES and enter into contracts with it,

including, but not limited to, the Investment Agreements.  At the time Plaintiffs made the

investment and entered the Investment Agreements, they did not know the representations or

promises by Defendants DIRECT EQUITIES, DIRECT EQUITIES, INC., KIRT, INGRID,

KINGSLAND, KASPUTIS and SCOTT were false and believed they were true.  Plaintiffs acted

in justifiable reliance upon the truth of the representations and promises.

79.     These representations and promises by Defendants DIRECT EQUITIES,

DIRECT EQUITIES, INC., KIRT, INGRID, KINGSLAND, KASPUTIS and SCOTT were in

fact false because Defendants embezzled the investment proceeds for their own personal

benefits, failed to secure the investments by 2nd deed of trust on the Real Properties and paid

themselves well before and beyond they were entitled.

80.     Defendants DIRECT EQUITIES, DIRECT EQUITIES, INC., KIRT, INGRID,

KINGSLAND, KASPUTIS and SCOTT concealed or suppressed the above-stated facts with the

intent to defraud and induce Plaintiffs to enter into the Investment Agreements and make

investment in DIRECT EQUITIES.   In justifiable reliance upon Defendants' representation and promises, Plaintiffs entered the Investment Agreements, made the investment, and have been damaged in an amount in excessive of $950,500, the exact amount to be proven at trial

WHEREFORE, Plaintiffs pray for judgment against Defendants DIRECT EQUITIES, DIRECT EQUITIES, INC., KIRT, THE ADMINISTRATOR OF THE ESTATE OF CRAIG N. KIRT, INGRID, KINGSLAND, KASPUTIS and SCOTT as set forth below.

### THIRD CLAIM

### Breach of Fiduciary Duty

[By All Plaintiffs Against Defendants DIRECT EQUITIES, DIRECT EQUITIES, INC., KIRT, THE ADMINISTRATOR OF THE ESTATE OF CRAIG N. KIRT, INGRID, KINGSLAND, KASPUTIS and SCOTT]

81.     Plaintiffs herein incorporate paragraphs 1-80 as though fully set forth herein.

82.     As partners and executive officers of Direct Equities, Defendants KIRT, INGRID, KINGSLAND, KASPUTIS and SCOTT owe fiduciary duty to Plaintiffs.

83.     Defendants breached such fiduciary duty by embezzling the assets of Direct Equities and Plaintiffs' investment for their personal use and enjoyment.

84.     Defendant KIRT also took the Real Properties under his own name and deprived the Plaintiffs of the ownership of the Real Properties.

85.     As a result of Defendants' breach of their fiduciary duty, Plaintiffs have been damaged in an amount in excessive of $950,500, the exact amount to be proven at trial.

WHEREFORE, Plaintiffs pray for judgment against Defendants DIRECT EQUITIES, DIRECT EQUITIES, INC., KIRT, THE ADMINISTRATOR OF THE ESTATE OF CRAIG N. KIRT, INGRID, KINGSLAND, KASPUTIS and SCOTT as set forth below.

### FOURTH CLAIM

### Conversion

[By All Plaintiffs Against Defendants DIRECT EQUITIES, DIRECT EQUITIES, INC., KIRT, THE ADMINISTRATOR OF THE ESTATE OF CRAIG N. KIRT, INGRID, KINGSLAND, KASPUTIS and SCOTT]

86.     Plaintiffs hereby incorporate by reference each and every allegation contained in Paragraph 1 through 85, inclusive, as if set forth in full herein.

87.     The Real Properties held by Defendant KIRT belong to Plaintiffs by legal claim of title.

88.     Defendants DIRECT EQUITIES, DIRECT EQUITIES, INC., KIRT, INGRID, KINGSLAND, KASPUTIS and SCOTT misappropriated investment funds that belong to the Plaintiffs.

89.     As a result of Defendants illegal conduct, Plaintiffs have been damaged in an amount in excessive of $950,500, the exact amount to be proven at trial

WHEREFORE, Plaintiffs pray for judgment against Defendants DIRECT EQUITIES, DIRECT EQUITIES, INC., KIRT, THE ADMINISTRATOR OF THE ESTATE OF CRAIG N. KIRT, INGRID, KINGSLAND, KASPUTIS and SCOTT as set forth below.

FIFTH CLAIM

Unauthorized Offer and Issuance of Securities

(Violation of California Corporations Code §25110)

[By All Plaintiffs Against Defendants DIRECT EQUITIES, DIRECT EQUITIES, INC., KIRT, THE ADMINISTRATOR OF THE ESTATE OF CRAIG N. KIRT, INGRID, KINGSLAND, SCOTT, KASPUTIS and WINTER]

90.     Plaintiffs herein incorporate paragraphs 1-89 as though fully set forth herein.

91.     It is unlawful for any person to offer or sell in California any securities in an issuer transaction without appropriate qualification or exemption.

92.    Defendants DIRECT EQUITIES, DIRECT EQUITIES, INC., KIRT, INGRID, KINGSLAND, SCOTT, KASPUTIS and WINTER were actively engaged in selling securities in the form of partnership interests in Direct Equities without qualification or appropriate exemption from qualification.

93.    Defendant WINTER acted as legal counsel to Direct Equities and actively participated in the illegal sale of securities by Direct Equities by preparing misleading documents, including, but not limited to, Investment Agreements, for Direct Equities and counseling Direct Equities in its illegal solicitation and sale of securities in California.

94.    As a result of Defendants illegal conduct, Plaintiffs have been damaged in an amount in excessive of $950,500, the exact amount to be proven at trial.

WHEREFORE, Plaintiffs pray for judgment against Defendants DIRECT EQUITIES, DIRECT EQUITIES, INC., KIRT, THE ADMINISTRATOR OF THE ESTATE OF CRAIG N. KIRT, INGRID, KINGSLAND, SCOTT, KASPUTIS and WINTER as set forth below.

## SIXTH CLAIM
Unlicensed Practice of Law: Malpractice
[By All Plaintiffs Against Defendant WINTER]

95.    Plaintiffs herein incorporate paragraphs 1-94 as though fully set forth herein.

96.    Defendant WINTER acted as corporate counsel to Defendant Direct Equities in its illegal solicitation and sale of partnership interest in California.

97.    Plaintiffs are informed and believes that Defendant WINTER, at all times mentioned herein, was a member of the Nevada Bar and not licensed to practice law in California.

98.     Defendant WINTER actively assisted Defendant Direct Equities and principals thereof to solicit and sell partnership interest in Direct Equities in California in violation of applicable federal and state securities laws of California.

99.     As a direct consequence of Defendant WINTER's unauthorized practice law in California and assistance to Direct Equities in its violation of the federal and state securities laws, Plaintiffs have been damaged in an amount in excessive of $950,500, the exact amount to be proven at trial.

WHEREFORE, Plaintiffs pray for judgment against Defendant WINTER as set forth below.

SEVENTH CLAIM
Legal Malpractice
[By All Plaintiffs Against Defendant WINTER]

100.    Plaintiffs herein incorporate paragraphs 1-99 as though fully set forth herein.

101.    Defendant WINTER acted as corporate counsel to Defendant Direct Equities in its illegal solicitation and sale of partnership interest in California.

102.    Defendant WINTER actively assisted Defendant Direct Equities and principals thereof to solicit and sell partnership interest in Direct Equities in California in violation of applicable federal and state securities laws of California.

103.    As a direct consequence of Defendant WINTER's assistance to Direct Equities in its breach of the federal and state securities laws, Plaintiffs have been damaged in an amount in excessive of $950,500, the exact amount to be proven at trial.

WHEREFORE, Plaintiffs pray for judgment against Defendant WINTER as set forth below.

EIGHTH CLAIM
Breach of Contract

[By Plaintiffs LEE, CHEN, ZHOU, TAN and HAO Against Defendant ENTRUST ADMINISTRATION, INC.]

104.    Plaintiffs herein incorporate paragraphs 1-103 as though fully set forth herein.

105.    When Plaintiffs LEE, CHEN, ZHOU, TAN and HAO contracted with Defendant ENTRUST to act as their retirement accounts administrator, Defendant ENTRUST agreed in writing to follow the investment directions that Plaintiffs provide with regard to their investments and to provide detailed periodical statements regarding Plaintiffs' retirement accounts.

106.    Plaintiffs LEE, CHEN, ZHOU, TAN and HAO gave specific instruction to Defendant ENTRUST as to which specific fund of Direct Equities that they wished to invest in.

107.    Defendant ENTRUST breached the agreements with Plaintiffs LEE, CHEN, ZHOU, TAN and HAO by failing to follow their investment instructions and making payments to Direct Equities' general account, rather the separate and specific fund accounts, hence facilitated the commingling and embezzlement of Plaintiffs investment by Defendants DIRECT EQUITIES, DIRECT EQUITIES, INC., KIRT, INGRID, KINGSLAND, SCOTT and KASPUTIS.

108.    Defendant ENTRUST also breached the agreements with Plaintiffs LEE, CHEN, ZHOU, TAN and HAO by failing to provide periodical specific account statements showing the balance and where about of their investments.

109.    As a direct and proximate result of Defendant ENTRUST's breach of contracts, Plaintiffs LEE, CHEN, ZHOU, TAN and HAO have been damaged in an amount in excessive of $250,000, the exact amount to be proven at trial.

WHEREFORE, Plaintiffs LEE, CHEN, ZHOU, TAN and HAO pray for judgment against Defendant ENTRUST as set forth below.

## NINTH CLAIM

### Negligence

[By Plaintiffs LEE, CHEN, ZHOU, TAN and HAO Against Defendant ENTRUST ADMINISTRATION, INC.]

110.    Plaintiffs herein incorporate paragraphs 1-109 as though fully set forth herein.

111.    When Plaintiffs LEE, CHEN, ZHOU, TAN and HAO contracted with Defendant ENTRUST to act as their retirement accounts administrator, Defendant ENTRUST agreed in writing to follow the investment directions that Plaintiffs provide with regard to their investments and to provide detailed periodical statements regarding Plaintiffs' retirement accounts.

112.    Plaintiffs LEE, CHEN, ZHOU, TAN and HAO gave specific instruction to Defendant ENTRUST as to which specific fund of Direct Equities that they wish to invest in.

113.    Defendant ENTRUST owes a duty of care to Plaintiffs LEE, CHEN, ZHOU, TAN and HAO to accurately and completely follow their investment instructions and to provide them with periodical specific account statements showing the balance and where about of their investments.

114.    Defendant ENTRUST also owes a duty of care to Plaintiffs LEE, CHEN, ZHOU, TAN and HAO to conduct reasonable research regarding the background of Direct Equities and its partners and executive officers.

115.    Defendant ENTRUST breached its duty of care to Plaintiffs LEE, CHEN, ZHOU, TAN and HAO by failing accurately and completely follow their investment instructions and to provide them with periodical specific account statements showing the balance and where about of their investments, and by failing to conduct reasonable research regarding the background of Direct Equities and its partners and executive officers.

116.   As a direct and proximate result of Defendant ENTRUST's breach of its duty, Plaintiffs LEE, CHEN, ZHOU, TAN and HAO lost their investment in excessive of $250,000.

WHEREFORE, Plaintiffs LEE, CHEN, ZHOU, TAN and HAO pray for judgment against Defendant ENTRUST as set forth below.

### TENTH CLAIM
#### Civil Conspiracy
[Against All Defendants]

117.   Plaintiffs hereby incorporate by reference each and every allegation contained in Paragraph 1 through 116, inclusive, as if set forth in full herein.

118.   Each and every defendant planned, participated in and undertook the actions described in this Complaint as agents of the other, acting in concert and for their mutual benefit.

119.   Plaintiffs have been damaged as a result of this conspiracy in an amount to be proven at trial.

WHEREFORE, Plaintiffs pray judgment against all Defendants as set forth below.

### ELEVENTH CLAIM
#### Common Counts
[By All Plaintiffs Against all Defendants]

120.   Plaintiffs incorporate by reference the allegations of paragraphs 1 through 119 as though set forth in full herein.

121.   Plaintiffs allege that Defendants became indebted to Plaintiffs within the last three years on an open book account to Plaintiffs for money paid, laid out, and expended to or for Defendants at Defendants' special instance and request.

WHEREFORE, Plaintiffs pray for judgment against all defendants as set forth below.

1.   Compensatory damages in the sum of $950,500;

2.   Punitive damages;

*Chi, et al. v. Direct Equities, et al.*
Complaint – Page 20

3.   Attorneys fees and costs Plaintiffs incurred in this action to the extent authorized by

law;

4.   Pre-judgment and post judgment interests; and

5.   Such other relief and the Court deems fair and just.

<u>DEMAND FOR JURY TRIAL</u>

Plaintiffs hereby demand a jury trial as provided by Rule 38(a) of the Federal Rules of

Civil Procedure.

Dated: April _16_, 2005.

FORTUNE LAW GROUP LLP

By: _____

James Cai
Judith Pearce
Attorneys for Plaintiffs